IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TYLAND MITCHEM,

        Plaintiff,

vs.                                            Case No. 13-1340-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 29, 2012, administrative law judge (ALJ) John Kays issued his decision (R. at 11-20). Plaintiff alleges that he had been disabled since September 25, 2009 (R. at 11). Plaintiff meets the insured status requirements for social security disability benefits through September 30, 2014 (R. at

4

13).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 13).  At step two, the ALJ found that plaintiff had the
following severe impairments:  status post separation of right
acromioclavicular (AC) joint; status post left ankle injury;
status post left ulna fracture with open reduction and internal
fixation; and borderline intellectual functioning (R. at 13).
At step three, the ALJ determined that plaintiff's impairments
do not meet or equal a listed impairment (R. at 14).  After
determining plaintiff's RFC (R. at 15), the ALJ determined at
step four that plaintiff is unable to perform past relevant work
(R. at 18).  At step five, the ALJ found that plaintiff can
perform jobs that exist in significant numbers in the national
economy (R. at 19).  Therefore, the ALJ concluded that plaintiff
was not disabled (R. at 19-20).

**III.  Did the ALJ err by failing to consider or discuss medical
opinion evidence?**

     An ALJ must evaluate every medical opinion in the record.
Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This
rule was recently described as a "well-known and overarching
requirement."  Martinez v. Astrue, 2011 WL 1549517 at *4 (10th
Cir. Apr. 26, 2011).  Even on issues reserved to the
Commissioner, including plaintiff's RFC and the ultimate issue
of disability, opinions from any medical source must be

carefully considered and must never be ignored.  Social Security

Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will"

evaluate every medical opinion that they receive, and will

consider a number of factors in deciding the weight to give to

any medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  It

is clear legal error to ignore a medical opinion.  Victory v.

Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

Furthermore, according to SSR 96-8p:

> The RFC assessment must always consider and
> address medical source opinions. If the RFC
> assessment conflicts with an opinion from a
> medical source, the adjudicator must explain
> why the opinion was not adopted.

1996 WL 374184 at *7.

Although an ALJ is not required to discuss every piece of

evidence, the ALJ must discuss significantly probative evidence

that he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010

(10th Cir. 1996).  Furthermore, the general principle that the

ALJ is not required to discuss every piece of evidence does not

control when an ALJ has opinion evidence from a medical source.

In such a situation, the ALJ must make clear what weight he gave

to that medical source opinion.  Knight v. Astrue, 388 Fed.

Appx. 768, 771 (10th Cir. July 21, 2010).

The ALJ limited plaintiff to lifting and carrying 20 pounds

occasionally and 10 pounds frequently.  He can sit, stand and/or

walk for 6 hours in an 8 hour workday; he cannot perform

overhead reaching with the right upper extremity, otherwise no limitations with fine and gross manipulation.  Plaintiff is limited to simple, repetitive tasks, a reasoning level of 1 or 2, minimum public contact, and no high production quotas, no rapid assembly and no safety operations (R. at 15).

On September 26, 2006, Dr. Hippe performed a mental consultative examination on the plaintiff, which included testing (R. at 390-395).  His conclusions were as follows:

> Specific cognitive deficits include: moderate impairments in concentration, moderate impairment of short-term and long-term memory capacities.  Mr. Mitchem's intellectual abilities most likely fall within the Borderline range.  Overall memory abilities are within the Borderline range. **Due to these factors, the claimant would require longer than normal to learn new tasks and/or requires special assistance to learn new tasks…**Mr. Mitchem would do better at repetitive tasks and might have difficulty with tasks that require [him] to frequently remember information.  **Being able to respond appropriately to changes in a routine work setting may cause some difficulty as well.  His ability to remember changes in job functions might also be compromised.  He may not have the ability to sustain an ordinary routine without special supervision.  Performing at a consistent pace without an unreasonable number and length of rest periods is likely to be a problem.  Based on performances on concentration-related mental status tasks, his capacity for concentration would not be adequate for focusing on simple tasks over a normal 8-hour workday.  Therefore, his ability to work with others without distractions or interference from cognitive symptoms is likely compromised.**

(R. at 394, emphasis added).  Although the ALJ briefly mentioned
the report in his decision (R. at 16), the ALJ failed to mention
any of the limitations contained in Dr. Hippe's detailed and
thorough assessment in 2006.[1]

On March 23, 2010, Dr. Stern performed a consultative
examination on the plaintiff (R. at 317-320).  He concluded that
plaintiff "presents with a number of cognitive and intellectual
difficulties which are likely to limit his ability to maintain
an adequate work schedule with average performance demands" (R.
at 320).  The ALJ accorded less weight to this opinion because
it was not consistent with the record as a whole, including
unremarkable mental status examinations (R. at 18).

The ALJ limited plaintiff to simple, repetitive tasks,
reasoning level 1 or 2, minimum public contact, no high
production quotas, no rapid assembly and no safety operations
(R. at 15).  However, Dr. Hippe opined a number of specific
limitations, including:

> 1.  Plaintiff would require longer than
> normal to learn new tasks and/or requires
> special assistance to learn new tasks.
>
> 2.  Being able to respond appropriately to
> changes in a routine work setting may cause
> some difficulty as well.

---

[1] Plaintiff alleges an onset date of September 25, 2009.  Dr. Hippe's report is from 2006.  Nonetheless, the ALJ discussed Dr. Hippe's report, but failed to mention any of the limitations set forth in his report.  Medical reports from earlier adjudicated periods are part of the case record and should be considered by the ALJ.  Hamlin v. Barnhart, 365 F.3d 1208, 1222-23 n. 15 (10th Cir. 2004).  In Lackey v. Barnhart, 127 Fed. Appx. 455, 458 (10th Cir. Apr. 5, 2005), the court stated that no authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant and, indeed, our precedent is to the contrary.

3.  His ability to remember changes in job
functions might also be compromised.

4.  He may not have the ability to sustain
an ordinary routine without special
supervision.

5.  Performing at a consistent pace without
an unreasonable number and length of rest
periods is likely to be a problem.

6.  His capacity for concentration would not
be adequate for focusing on simple tasks
over a normal 8-hour workday.

7.  His ability to work with others without
distractions or interference from cognitive
symptoms is likely compromised.

(R. at 394).  However, the ALJ failed to mention any of these

limitations, and failed, without explanation, to include any of

them in his RFC findings.

As the case law and regulations make clear, medical

opinions must be considered and can never be ignored.  SSR 96-8p

states that when a medical assessment conflicts with an opinion

from a medical source, the ALJ "must" explain why the opinion

was not adopted.  Even though the ALJ limited plaintiff to

simple work, Dr. Hippe stated that plaintiff's capacity for

concentration would not be adequate for focusing on simple tasks

over a normal 8-hour workday.[2]  Dr. Hippe also found that

---

[2] Even simple work can be ruled out by a vocational expert on the basis of a serious impairment in concentration and attention.  Moderate impairments may also decrease a claimant's ability to perform simple work.  Bowers v. Astrue, 271 Fed. Appx. 731, 733 (10th Cir. March 26, 2008); see Brosnahan v. Barnhart, 336 F.3d 671, 675 (8th Cir. 2003); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)(two medical opinions indicated that that claimant had moderate limitations in his ability to maintain attention and concentration for extended periods; the vocational expert testified

plaintiff would need "special" assistance to learn new tasks, and may not be able to sustain an ordinary routine without "special" supervision.  The ALJ clearly violated the regulations and case law by not considering the limitations set forth by Dr. Hippe in 2006.  This case shall therefore be remanded in order for the ALJ to follow the regulations and case law by considering the limitations set forth by Dr. Hippe, and either including them in his RFC findings, or providing a legally sufficient explanation for not including them in his RFC findings.  The ALJ should also consider the opinions of Dr. Hippe in light of Dr. Stern's opinion in 2010 that plaintiff presents with a number of cognitive and intellectual difficulties which are likely to limit his ability to maintain an adequate work schedule with average performance demands.[3]

A work status report from Dr. Strong on August 15, 2007 limited plaintiff to lifting 2 pounds, no climbing, and no work

---

that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis regardless of what the job required from a physical or skill standpoint; the court rejected the Commissioner's contention that deficiencies in attention and concentration, along with other mental limitations, did not have to be included in the hypothetical question because the question limited the claimant's capabilities to simple jobs).

Furthermore, in Wiederholt v. Barnhart, 121 Fed. Appx. 833, 839 (10th Cir. Feb. 8, 2005), the ALJ posed a hypothetical question that limited plaintiff to simple, unskilled work, and omitted from the hypothetical the ALJ's earlier and more specific findings that she had various mild and moderate restrictions.  The court held that the relatively broad, unspecified nature of the description "simple" and "unskilled" did not adequately incorporate additional, more specific findings regarding a claimant's mental impairments (including moderate difficulty in maintaining concentration, persistence, or pace), and therefore the hypothetical question was flawed.  Because of the flawed hypothetical, the court found that the VE's opinion that the claimant could perform other work was therefore not substantial evidence to support the ALJ's decision.

[3] The ALJ accorded "less" weight to the opinions of Dr. Stern because they were not consistent with the record as a whole, including "unremarkable" mental status examinations (R. at 18).  However, on remand, the opinions of Dr. Stern must be considered in light of the assessment by Dr. Hippe, which was based on a mental status examination and testing.

above chest level (R. at 294).  The ALJ failed to mention these
limitations in his decision.  For the reasons set forth above,
on remand, the ALJ shall consider the limitations set forth by
Dr. Strong, and make findings as to what weight, if any, to
accord to his opinions.  For all the medical opinion evidence
that addresses either physical or mental limitations, if the RFC
assessment conflicts with an opinion from a medical source, the
ALJ must explain why the opinion was not adopted.

**IV.  Did the ALJ err in his consideration of plaintiff's daily
activities?**

     The ALJ noted that plaintiff daily activities included
personal care, cooking, cleaning, laundry, paying bills,
watching television, playing games, using public transportation,
talking to people, and going to church and social groups.  The
ALJ stated that some of the physical and mental abilities and
social interactions required in order to perform these
activities are the same as those necessary for obtaining and
maintaining employment (R. at 17).

     According to the regulations, activities such as taking
care of yourself, household tasks, hobbies, therapy, school
attendance, club activities or social programs are generally not
considered to constitute substantial gainful activity.  20
C.F.R. § 404.1572(c) (2013 at 399).  Furthermore, although the
nature of daily activities is one of many factors to be

considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.** As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes,

12

did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In <u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: **"We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'"** Id. (quoting <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner

> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**

> <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

Plaintiff's activities, as described above, do not qualify as the ability to do substantial gainful activity.  Watching television is not inconsistent with allegations that a person is

unable to work.  See Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011)(watching television not inconsistent with allegations of pain and concentration problems).  Furthermore, one does not need to be utterly or totally incapacitated in order to be disabled.  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).  On remand, the ALJ will need to consider plaintiff's daily activities in light of the regulations and case law set forth above.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 17th day of September 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge